UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20-cv-00670-AGF |
| | ) | |
| KHAYRULLAEV, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Thomas Carter brings this case on behalf of himself, individually, and on behalf of the estate of Margaret Carter, who died when a commercial motor vehicle collided with her car on September 17, 2017.  (Doc. No. 1, Exh. 3).  General Electric ("GE") arranged for Defendant Landstar Ranger, Inc. ("Landstar") to transport a bake oven.  Landstar hired Defendant American Power Transportation ("APT") to carry the commercial load.  APT contracted with Defendant MGI Express, LLC ("MGI") to lease one of MGI's trucks to haul the load.  (Doc. No. 81 at 2).  MGI then hired Defendant Zukriddin Khayrullaev to drive the commercial vehicle.  *Id.* at 1.  On the day of the collision, Khayrullaev was driving westbound on Interstate 44 when he lost control of the tractor trailer of MGI's vehicle, entered the eastbound lane of the interstate, and struck Ms. Carter's vehicle.  *Id.*

Plaintiff brings five claims against Defendants related to this incident.  At issue in this order are Count II, for negligence and negligence *per se* against APT, MGI, and Landstar; and Count V, for negligent entrustment against Landstar.  (Doc. No. 1, Exh. 3).

Landstar has moved for summary judgment on Count II, asserting that there are no grounds for vicarious liability, and on Count V of Plaintiff's complaint, asserting preemption and that the facts do not support the claim that Landstar negligently selected APT. (Doc. No. 67). For the reasons outlined below, the Court will grant in part and deny in part the motion.

## BACKGROUND

Construing in the light most favorable to Plaintiff, the record supports the following facts. On September 17, 2017, Khayrullaev lost control of a tractor-trailer attached to a commercial motor vehicle he drove on behalf of APT. (Doc. No. 81 at 1). When Khayrullaev lost control, he crossed over the yellow dividing line on the portion of Interstate 44 on which he was driving and struck Ms. Carter's vehicle. *Id*. Ms. Carter died as a result of the accident.

Landstar entered into a Transportation Brokerage Agreement (the "Agreement") with APT approximately four years prior to the accident. (Doc. No. 81 at 3). The Agreement provides that APT is "wholly responsible for the contemplated transportation and for all costs and expenses of such transportation." *Id*. at 4. These costs include furnishing all necessary equipment, and utilizing "only competent, able, and legally licensed and qualified personnel." *Id*. However, Landstar's Load Confirmation Form (the "Form") is also incorporated into the Agreement by reference. *Id*. The Form requires that APT drivers: (i) download the Landstar Connect Tracking System, (ii) be in contact with Landstar for "check calls" at all hours, (iii) use a certain type of truck, (iv) secure their load in a particular manner, (v) pick up the load at a specific time, and (vi)

2

wear a Landstar uniform. *Id*.

At the time Landstar and APT entered into the Agreement, Landstar's policies included a 2011 "Landstar Uniform Policy for Qualification of Third-party Motor Carriers." (Doc. No. 81 at 29). These policies required that Landstar examine a company applying to be a carrier for a safety rating from the Department of Transportation. *Id*. at 30. If the company was not rated, Landstar would then examine the company's Behavior Analysis Safety Improvement Categories scores ("BASIC") scores. *Id.* If the company fell within a sixty-five to eighty range in the categories of unsafe driving or fatigued driving, or if the driver fell within the eighty to ninety-five range in the categories of driver fitness, controlled substance use, and vehicle maintenance, Landstar would not approve the carrier. *Id.* If a company lacked both a rating and safety information, Landstar could not approve the company as a carrier. *Id*. at 31. When Landstar first approved APT as a carrier in 2013, APT was a new carrier and lacked a safety rating from the DOT, and no Landstar employee conducted an analysis to determine APT's BASIC scores. (Doc. No. 67, Exh. E at 70:3; 71:5-23).

Landstar also required that all "outside" carriers, like APT, engage in an annual requalification or review. (Doc. No. 81 at 31). This review examined safety ratings and BASIC scores. *Id*. However, between 2014 and 2017, no Landstar employee conducted a review for APT. *Id*. at 31-32.

As of 2014, Landstar reviewed its carriers' BASIC scores through a vendor called SaferWatch. (Doc. No. 68 at 14). The SaferWatch data for APT reveals that the company had an unsafe driving score in excess of the threshold ceiling in March 2015, on

3

October 12th and 26th, 2016, and in March 2017. *Id.* at 32-33. However, Landstar neither reviewed APT's scores nor disqualified APT for unsafe driving, as otherwise required by Landstar's policies. *Id.*

## ARGUMENTS OF THE PARTIES

Only two claims in Plaintiff's complaint relate to Landstar: (i) Count II, for negligence and negligence *per se*; and (ii) Count V, for negligent entrustment. (Doc. No. 1, Exh. 3). As to Count II, Landstar also asserts that it cannot be held vicariously liable for Khayrullaev's negligence because it did not engage in a joint venture with APT, and also, because it did not exercise sufficient control over Khayrullaev's work to establish a master-servant relationship between the two of them. (Doc. No. 68 at 9). Plaintiff concedes the argument with respect to any joint venture.

As to Count V, Landstar alleges that Missouri negligence law is expressly preempted by 49 U.S.C. § 14501(c)(1), which Congress intended to deregulate interstate shipping. (Doc. No. 68 at 4). Plaintiff claims in response that 49 U.S.C. § 14501(c)(2)(A) carves out an exception for states to regulate the safety of portions of the interstate in their territory, and that this exception applies to protect Missouri negligence laws. (Doc. No. 82 at 4). Landstar also claims that it did not negligently entrust Khayrullaev with the tractor-trailer at issue in the accident. (Doc. No. 68 at 14). APT and MGI provided Khayrullaev with the tractor-trailer, and Landstar is only liable for that decision to the extent that it is liable for APT's actions. *Id.* Landstar therefore argues that it did not negligently select or hire APT, and that, in the alternative, its negligent selection of APT as a carrier did not proximately cause the accident. Plaintiff responds

4

that Landstar negligently selected a carrier whose driving record fell below Landstar's threshold requirements, and that this selection contributed to the cause of the collision. (Doc. No. 82 at 12-15).

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he burden of demonstrating there are no genuine issues of material fact rests on the moving party, and we review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).  To avoid summary judgment, the nonmovant has the "burden of presenting evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in their favor." *Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010 (8th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

### II. Federal Preemption

Landstar first asserts that Plaintiff's claim for negligent entrustment is preempted by 49 U.S.C. § 14501(c)(1) (the "FAAA").  (Doc. No. 68 at 4).  The doctrine of preemption "derives from the Constitution's Supremacy clause, which states that laws of the United States made pursuant to the Constitution are the 'supreme Law of the Land.'"

5

*Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 886 (8th Cir. 2005) (quoting U.S. CONST. ART. VI., cl. 2). This case raises an issue of express preemption, which occurs when a federal law explicitly prohibits state regulation in a certain field. *See Mo. Brd. Of Examiners v. Hearing Help Express, Inc.*, 447 F.3d 1033, 1035 (8th Cir. 2006). Congress enacted the FAAA in order to preempt state trucking regulations, thus avoiding a "patchwork of state service-determining laws, rules, and regulations" which would place a heavy economic burden on the trucking industry. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 264 (2013) (citing *Rowe v. N.W. Transp. Ass'n*, 552 U.S. 364, 373 (2008)). The relevant portion of the FAAA provides:

> [A] State…may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier…or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

The Supreme Court has broadly interpreted the phrase "relating to" in the FAAA as "encompassing all state laws having any connection with or reference to the carrier's rates, routes, or services." *See Data Mfg., Inc. v. United Parcel Service, Inc.*, 557 F.3d 849, 852 (8th Cir. 2009) (internal citation omitted). This preemption includes not only laws established by statute, but also those established by common-law, such as negligent brokering. *See Uhrhan v. B&B Cargo, Inc.*, No. 4:17-cv-02720-JAR, 2020 WL 4501104, at *3 (E.D. Mo. Aug. 5, 2020) (internal citations omitted). However, Congress intended only to preempt state economic regulation of air and motor carriers of property, not state safety regulations. *Id*. (citing *Tow Operators Working to Protect Their Right to Operate*

6

*on the Streets of Kansas City v. City of Kansas City*, 338 F.3d 873, 874 (8th Cir. 2003)).

Congress therefore included in the FAAA a provision limiting the statute's preemptive scope:

> Paragraph (1) shall not restrict the safety authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

49 U.S.C. § 14501(c)(2) (the "safety exception").

Only one circuit court has addressed the question of whether the FAAA preempts common-law negligence claims. In *Miller v. C.H. Robinson Worldwide, Inc.*, the Ninth Circuit held that negligent brokering or entrustment claims are not preempted by the FAAA. 976 F.3d 1016, 1023 (9th Cir. 2020), abrogated on other grounds by *R.J. Reynolds Tobacco Company v. County of Los Angeles*, 29 F.4th 542, 553n.6 (9th Cir. 2022) (noting that the parties in *Miller* failed to consider cases holding that no presumption of preemption applies when evaluating an express preemption clause). While the Court found that a claim of negligent selection of a carrier was "related" to broker services under the meaning of the preemption clause, *id.* at 1024, it also fell under the safety exception. *Id.* at 1030-1031. *See also California Trucking Association v. Bonta*, 996 F.3d 644, 663 (9th Cir. 2021) (holding that while the FAAA did not preempt common-law negligence claims, it did preempt generally applicable statutory labor laws). The Supreme Court has not addressed this issue, and district courts which have considered the question are split "on both the outcome and the rationale." *Uhrhan*, 2020

7

WL 4501104, at *2 (internal quotations and marks omitted).

In two cases, courts in the Eastern District of Missouri have found that the FAAA does not preempt common-law negligent brokering claims because such claims fall within the safety exception. *See Mendoza v. BSB Transport, Inc.*, Case No. 4:20 CV 270 CDP, 2020 WL 6270743, at *3 (E.D. Mo. Oct. 26, 2020) (internal citations omitted); *Uhrhan*, 2020 WL 4501105, at *5; *accord, Wolf v. AIT Worldwide Logistics, Inc.*, No. 1:17-cv-30-HCA, 2021 WL 6144685, at *10 (S.D. Iowa Sep. 27, 2021). Additionally, although the Circuit has not directly addressed the FAAA, the Eighth Circuit has considered the Airline Deregulation Act of 1978, on which the FAAA was based, and found that the statute did not preempt state common-law negligence claims. *See Watson v. Air Methods Corporation,* 870 F.3d 812, 818 (8th Cir. 2017). *See generally Rowe v. New Hampshire Motor Transport Ass'n,* 552 U.S. 364, 370 (2008) (noting that Congress "copied the language of the air-carrier pre-emption provision of the Airline Deregulation Act of 1978" when crafting the FAAA). Landstar urges the Court to find these cases wrongly decided. (Doc. No. 69 at 7). The Court declines to do so.

The touchstone of federal preemption analysis is Congressional intent. *See Cipollone v. Ligget Group, Inc.*, 505 U.S. 504, 544 (1992) (Blackmun, J., concurring). Courts discern Congressional intent from the language of the preemption statute, as well as from the structure and purpose of the statute as a whole. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996). Where, as here, a statute contains an express preemption clause, Courts do not invoke any presumption against preemption, but instead examine the plain wording of the clause, "which necessarily contains the best evidence of

8

Congress'[s] pre-emptive intent." *Puerto Rico v. Franklin California Tax-Free Trust*, 579 U.S. 115, 125 (2016) (internal quotations and marks omitted). However, courts are not to find that Congress has preempted the States' historic police powers "unless that was the clear and manifest purpose of Congress." *City of Columbus v. Ours Garage and Wrecker Srvc., Inc.*, 536 U.S. 424, 438 (2002). The Supreme Court has directed lower courts to broadly interpret the safety exception. *Id.* at 437 (considering whether the safety exception excluded laws passed pursuant to the powers of political subdivisions of a state).

Landstar argues that permitting each state to impose unique restrictions on how a company in the trucking business selects its partners would establish a high burden on carriers to comply with the vast variety of state laws. (Doc. No. 69 at 5). While this may be true of statutory laws, common-law claims, like negligence, "regulate claims by imposing broad standards of conduct, not by compelling individuals to engage in…any specific conduct." *Miller*, 976 F.3d at 1025 (internal citations omitted). The duty carriers must exercise in order to avoid common-law claims for negligence against them is therefore merely the broad duty to exercise ordinary care. *Id*.

Negligence claims against brokers that arise out of motor vehicle accidents do not directly regulate the vehicles, but instead generally "promote safety on the road." *Miller*, 976 F.3d at 1025 (internal citations omitted). The ability to regulate road safety falls squarely within the states' historic police powers and clearly "concerns motor vehicles and their safe operation." *Uhrhan*, 2020 WL 4501104, at *5 (internal citations omitted). Accordingly, the Court finds that Plaintiff's claim for negligent selection of APT is not

9

preempted by the FAAA, as it falls squarely within the statute's safety exception to its preemption clause.

### III. Negligent Entrustment

Count V of Plaintiff's complaint alleges that Landstar negligently entrusted Khayrullaev with operating the tractor-trailer involved in the accident at issue. (Doc. No. 1, Exh. 3 at 20). In order to succeed on a claim for negligent entrustment, Plaintiff must show: (i) that Khayrullaev was incompetent, (ii) that whoever entrusted Khayrullaev with the tractor-trailer knew or had reason to know of the incompetence; (iii) that there was an entrustment of chattel, in this case, the tractor-trailer; and (iv) that the negligent entrustment concurred with Khayrullaev's negligence to cause the harm to Plaintiff. *See McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo. 1995). There is no evidence, however, that Landstar entrusted Khayrullaev with the tractor-trailer: MGI owned the tractor-trailer, and APT hired Khayrullaev and organized his tasks involving the tractor-trailer. (Doc. No. 89 at 9). Landstar is therefore responsible for negligent entrustment only to the extent that it is liable for APT's decision to entrust Khayruallev with the tractor-trailer. Plaintiff thus faces a dual burden on this motion for summary judgment. He must demonstrate (i) that Landstar is liable for APT's decision, and (ii) that APT's entrustment decision was negligent. The parties focus only on the first prong of this analysis.

An employer is liable for its independent contractor's negligent conduct if the employer fails to exercise reasonable care in hiring a competent independent contractor. *See LeBlanc v. Research Belton Hosp.*, 278 S.W. 3d 201, 206 (Mo. Ct. App. 2008) (quoting *Lee v. Pulitzer Publ'g Co.*, 81 S.W.3d 625, 634 (Mo. Ct. App. 2002) (further

10

internal citations omitted). An employer has a duty to hire a "skilled and competent contractor." *Lonero v. Dillick*, 208 S.W.3d 323, 329 (Mo. Ct. App. 2006) (citing *Sullivan v. St. Louis Station Assocs.*, 770 S.W.2d 352, 356 (Mo. Ct. App. 1989)). A competent and careful contractor has "the knowledge, skill, experience, and available equipment which a reasonable person would realize that a contractor must have in order to do the work which he or she is employed to do without creating unreasonable risk of injury to others, and who also possesses the personal characteristics which are equally necessary." *Lee*, 81 S.W.3d at 635 (citing Restatement (Second) of Torts § 411 (1965)).

The requirements for establishing the negligent hiring of an independent contractor are similar to those for establishing negligent entrustment. Plaintiff must show that (i) Landstar knew or should have known that APT was incompetent to carry its load, and (ii) that this negligence proximately caused Plaintiff's injuries. *See Riley v. A.K. Logistics, Inc.*, Case No. 1:15-cv-00069-JAR, 2017 WL 2501138, at *2 (E.D. Mo. Jun. 9, 2017) (citing *Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. 1997)) (further internal citation omitted). A contractor's negligence does not create a presumption that the employer was negligent in selecting that contractor. *See Sullivan*, 770 S.W.2d at 356 (internal citations omitted). Furthermore, if the contractor hired was actually competent, the employer is not liable for that contractor's negligence, regardless of the care it took in selecting the contractor. *See Lonero*, 208 S.W.3d at 329 (citing *Sullivan*, 770 S.W.2d at 356).

The parties disagree as to the extent to which APT's Behavior Analysis and Safety Improvement Categories ("BASIC scores") demonstrate its competency. (Doc. No. 97 at

11

8). The Federal Motor Carrier Safety Administration ("FMCSA") uses BASIC scores to rate motor carriers in a variety of categories, including crashes, driver fitness, hours of service, and unsafe driving. *See Riley*, 2017 WL 2501138, at *1. The scores rank motor carriers' safety performance against that of other carriers, thus producing a percentile score in each category based on how a carrier has performed in comparison to its peers. *Id*. However, the FMCSA warns that BASIC scores do not provide ultimate conclusions about a carrier's overall safety. *Id*. Landstar explains that BASIC scores often fluctuate, even when a carrier does not have an "event," such as an accident, which would otherwise impact the score. (Doc. No. 97 at 8). Nevertheless, Landstar has made BASIC scores an integral part of its own determination of whether or not a carrier is sufficiently competent to work with Landstar.

      Further, a defendant's failure to follow its own policies is relevant to the question of negligent selection when it relates to a defendant's established duties. *See Pugh v. Fang JunQing*, Case No. 4:16-CV-1881 RLW, 2018 WL 1406589, at *5 (E.D. Mo. Mar. 20, 2018) (citing *Burroughs v. Mackie Moving Sys. Corp.*, No. 4:07CV1944MLM, 2010 WL 1254630, at *5 (E.D. Mo. Mar. 24, 2010) and *Manzella v. Gilbert-Magil Co.*, 965 S.W.2d 221, 229 (Mo. Ct. App. 1998)). Here, the established duty is to select a competent and careful carrier. *See Riley,* 2017 WL 2501138, at *5. Landstar's policies strongly relate to that duty. Its 2011 policies in effect at the time it selected APT as a carrier required examining the company for a safety rating from the Department of Transportation prior to executing a brokering agreement with that company. (Doc. No. 67, Exh. E at 18:6-7). Its policies also provided that it will not execute a brokering

12

agreement with a company that is rated "conditional" or "unsatisfactory." *Id*. at 18:8-10. If the company is not rated, Landstar will examine the company's safety scores, including its BASIC scores. *Id.* at 70:15-22. However, if a company lacked both a rating and safety information, Landstar could not approve the company as a carrier. *Id*. at 69:3-10. When Landstar first approved APT as a carrier in 2013, APT lacked a safety rating from the DOT because it was a new company, and no Landstar employee conducted an analysis to determine APT's BASIC scores. *Id*. at 70:3; 71:5-23.

Additionally, as stated above, as of 2014, Landstar reviewed its carriers' BASIC scores through SaferWatch. (Doc. No. 68 at 14). In March of 2015, APT received an "unsafe" driving score of eighty-five, which would have disqualified the company from carrier consideration under Landstar's policies. (Doc. No. 82 at 13). APT again received disqualifying scores for unsafe driving on October 12, 2016, October 26, 2016, and March 21, 2017. *Id.* However, Plaintiff has presented evidence that Landstar neither reviewed APT's scores nor disqualified APT for unsafe driving, as otherwise required by Landstar's policies. *Id.* Viewing the facts most favorably to Plaintiff, there is at least a genuine question as to whether Landstar selected APT negligently.

Landstar did not raise the issue of proximate causation in its motion for summary judgment; however, Plaintiff asserted that there is a causal connection between Landstar's negligent selection of APT in its response brief. Landstar contested that assertion only in its reply brief. (Doc. No. 97 at 11). The Court typically will not consider arguments raised only in a reply brief. Nevertheless, even if properly asserted, again construing the facts most favorably to Plaintiff, Landstar has not established that it

13

is entitled to a judgment as a matter of law on this issue.

The test for proximate causation is whether an injury is the "natural and probable consequence of the defendant's negligence." *Reed v. Kelly*, 37 S.W.3d 274, 277 (Mo. Ct. App. 2000) (citing *Stanley v. City of Independence*, 995 S.W.2d 485, 488 (Mo. banc 1999)). The employer of a negligently selected contractor is subject to liability for harm resulting from the failure to select a competent contractor, but only for the harm that is caused by that negligent selection. *See Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 657 (Mo. banc 2019) (citing Restatement (Second) of Torts § 411, cmt. b). If the contractor's incompetence consists of a lack of skill or experience, then the employer is subject to liability for harm resulting from that lack of skill or experience. The employer is not subject to liability for harm resulting solely from the contractor's inattention or negligence. *Id*. Here, Plaintiff has offered sufficient evidence to raise a question for the jury regarding whether Landstar's failure to select a driver with higher BASIC scores is a proximate cause of the collision at issue in this case. As neither party addresses whether APT negligently entrusted Khayrullaev with the tractor-trailer, this finding is sufficient to deny summary judgment on this issue.

### IV. Joint Venture

Count II of Plaintiff's complaint alleges that Landstar "jointly" acted with APT and MGI. (Doc. No. 1, Exh. 3 at 11). Landstar argues that the record does not support any assertion that it entered into a joint venture with either APT or MGI. (Doc. No. 69 at 7). In response, Plaintiff asserts that he is pursuing only two claims against Landstar: (i) negligence and negligence *per se* (Count II); and (ii) negligent entrustment (Count V).

14

(Doc. No. 82 at 6). Plaintiff has represented that he will not pursue a claim against Landstar on the basis of any joint venture. *Id*. The Court will therefore grant Landstar's motion for summary judgment as to any claims against it on the basis of a joint venture.

V.   **Agency**

Count II of Plaintiff's complaint is premised on Landstar's vicarious liability for Khayrullaev's negligence under the theory of *respondeat superior*. (Doc. No. 1, Exh. 3 at 11). An employer is liable for the misconduct of an employee or agent under the doctrine of *respondeat superior* when that employee or agent acts within the scope and course of the employment or agency to cause the damages at issue. *See McHaffie*, 891 S.W.2d at 825 (internal citations omitted). However, employers generally do not bear vicarious liability for the acts of their independent contractors. *Kaplan v. U.S. Bank, N.A.*, 166 S.W.3d 60, 66 (Mo. Ct. App. 2003) (internal citations omitted). Whether an individual is an agent or an independent contractor is typically a question of fact. However, when the facts are undisputed and the Court can draw only one reasonable conclusion from those facts, the question may be decided as a matter of law. *See Huggins v. FedEx Ground Package Sys. Inc.*, 592 F.3d 853, 857 (8th Cir. 2010) (applying Missouri law).

Courts apply ten factors to distinguish between employees and independent contractors, including: (i) the extent of control the employer exercises over the details of the work; (ii) whether the employee is engaged in a distinct occupation or business; (iii) whether that work is typically done under the direction of an employer or by a specialist without supervision; (iv) the skill required for the occupation; (v) whether the employer

15

provided the instrumentalities, tools, and place of work for the employee; (vi) the length of employment; (vii) the method of payment, whether by the time spent on the job or per job; (viii) whether the work is part of the regular business of the employer; (ix) whether the parties believe they are creating the relationship of a master and a servant; and (x) whether the principal is or is not in the business. *See Keller v. Mo. Baptist Hosp. of Sullivan*, 800 S.W.2d 35, 38 (Mo. Ct. App. 1990) (internal quotations and marks omitted). The "pivotal factor" is the right to control the employee's work. *Leach v. Bd. of Police Comm'rs of Kansas City*, 118 S.W.3d 646, 649 (Mo. Ct. App. 2003). "If there is no right to control, there is no liability because no master-servant relationship exists." *Hougland v. Pulitzer Pub. Co.*, 939 S.W.2d 31, 33 (Mo. Ct. App. 1997) (internal citations omitted).

Landstar asserts that neither APT nor Khayrullaev were its agents or employees. (Doc. No. 68 at 9). In so arguing, it relies on its contract with APT, which describes APT as an independent contractor with the ability to hire its own employees. *Id*. Furthermore, Landstar points out that the Load Confirmation which GE emailed to APT directly included a number of GE's requirements, while the contract between APT and Landstar made no similar requirements. *Id*. at 10.

The parties agree that APT hired Khayrullaev. (Doc. No. 81 at 9). Additionally, the Agreement provides that APT is "wholly responsible" for the transportation, including the equipment, its maintenance, and the people who operate the equipment. (Doc. No. 81 at 4). Nevertheless, there is some indication that Landstar retained the right to control some aspects of Khayrullaev's work in the Form incorporated into the Agreement. The

16

parties do not discuss whether the terms outlined in the Agreement or in the Form are binding on APT, Khayrullaev, and Landstar; thus, the Court makes the reasonable inference in favor of Plaintiff that the Form operated to bind the parties through incorporation into the Agreement.  Viewing the facts in the light most favorably to Plaintiff, the Court finds that questions of fact exist regarding Landstar's control over how Khayrullaev completed his work on behalf of APT.  *Cf. Olson v. Pennzoil Co.*, 943 F.2d 881, 883-884 (8th Cir. 1991) (internal citations omitted)(finding no vicarious liability when Penzoil merely contracted to have the work done in the customary manner and was concerned only with the final product).  Accordingly, summary judgment is denied on this issue.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**.  (Doc. No. 67).  The motion is **GRANTED** as to any claim against Landstar premised on joint liability.  It is otherwise **DENIED.**

**IT IS FURTHER ORDERED** that the parties shall meet and confer with respect to the trial setting and, no later than **14 days** from the date of this Memorandum and Order, file a joint notice advising the Court of their proposed schedule for trial or otherwise advising the Court as to the status of the case.

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of October, 2022.